**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**DELISA C.**

                              **Plaintiff,**                    **22-CV-00312-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**DECISION AND ORDER**

As set forth in the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings,

including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

**BACKGROUND**

On October 25, 2018, plaintiff, at the age of 30, protectively filed an

application for supplemental security income, with an onset date of September 19, 2018.

Dkt. #6, pp. 156-161.[1] Plaintiff alleged she was disabled due to herniated discs in her

back. Dkt. #6, p. 169.

The SSA denied plaintiff's claim initially on February 27, 2019, Dkt. #6,

pp. 87-92, and on reconsideration on June 18, 2019. Dkt. #6, p. 86. Plaintiff requested a

hearing, and a telephonic hearing was held on October 22, 2020 before Administrative

_____
[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Law Judge ("ALJ") Seth I. Grossman . Dkt. #6, pp. 32-63. Plaintiff appeared with counsel at the hearing.

Plaintiff testified that she has a lot of pain in her low back, buttocks, and legs and that she has numbness and muscle spasms. Dkt. #6, p. 40. She also testified that she has problems standing or walking for long periods of time and she has a burning sensation in her hips and buttocks. Dkt. #6, p. 42. She estimated that she could only stand for five minutes before needing to sit down. Dkt. #6, p. 43. She is also frightened to walk up or down stairs and does not use stairs unless she is with someone. Dkt. #6, pp. 42-43.

Plaintiff further testified that she could sit for approximately 20 minutes at a time. Dkt. #6, p. 44. She cooks sometimes, but she does not clean because bending and reaching are hard for her. *Id.* She does not have a driver's license. *Id.* She also testified that she cannot lift 5 pounds. Dkt. #6, p. 45.

Plaintiff testified that she enjoys watching television, listening to music, and reading books. Dkt. #6, pp. 44-45.

On examination by her counsel, plaintiff testified that she could walk only 10 or 15 steps before she gets winded and that she cannot go anywhere without using a cane. Dkt. #6, p. 46. She also testified that if she were doing continuous activity for an

eight-hour period she would need to take a break every 15-20 minutes, with the break lasting an hour or two. Dkt. #6, pp. 46-47.

Plaintiff testified that she is unable to stoop, crouch, or squat, and that reaching over her head causes a sharp pain in her back. Dkt. #6, p. 47. She can reach to the front, but it is very difficult for her to bend over. *Id*. She further testified that moving her head from side to side or up and down is painful, and she has great difficulty going from sitting to standing. Dkt. #6, p. 49. She also needs to hold onto something to get out of bed. Dkt. #6, pp. 49-50.

Plaintiff further testified that she would not be able to maintain a regular schedule and be somewhere every day at a certain time because, when she has bad days, she sometimes cannot get out of bed. Dkt. #6, pp. 50-51. The pain also makes it difficult to focus and concentrate. Dkt. #6, p. 51.

Plaintiff next testified that she does not go to the grocery store alone but goes with her mom and sister, Dkt. #6, p. 52. She needs help putting on her shoes and getting in and out of the shower or tub. Dkt. #6, p. 55. Finally, plaintiff testified that she has trouble getting to the bathroom and has accidents. Dkt. #6, p. 56.

The ALJ then heard testimony from Robert Edwards, a vocational expert ("VE"). The ALJ asked the VE to consider a hypothetical person of plaintiff's educational and vocational background who can do sedentary work, except occasional stooping,

kneeling, and crouching; no crawling; and she needs to use a cane. Dkt. #6, p. 60. The VE testified that there are sedentary, unskilled jobs in the national economy within that hypothetical, including document preparer, telephone order clerk, and call-out operator. Dkt. #6, p. 61.

On cross-examination, the VE testified that if the individual was off task more than 10% of the time or absent two or more days a month, no jobs would be available. Dkt. #6, pp. 61-62.

On February 12, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #6, pp. 16-31. The Appeals Council denied plaintiff's request for review on February 24, 2022, making the ALJ's decision the final decision of the Commissioner. Dkt. #6, pp. 5-7 Plaintiff filed this action on April 22, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since October 25, 2018, the application date; (2) plaintiff has the severe impairments of lumbar degenerative disc disease and morbid obesity; (3) plaintiff's impairments do not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[2], except occasional stooping, kneeling, and crouching, no crawling, and she needs a cane; (5) plaintiff has no past relevant work; and (6) plaintiff is capable of working as a document preparer, telephone order clerk, and call out operator, and is not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp. 21-27.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

<u>**Challenges to the ALJ's Decision**</u>

Plaintiff makes two challenges to the ALJ's decision: (1) he failed to properly consider plaintiff's major depression at step two and subsequent steps; and (2) he failed to rely on substantial evidence in assessing plaintiff's RFC and improperly relied on his own lay opinion. Dkt. #7-1, p. 1.

<u>**Plaintiff's Major Depression**</u>

Plaintiff first argues that the ALJ improperly found plaintiff's depression to be non-severe and, in so doing, "ignored" the treatment records of her primary care provider, Dr. Winston G. Douglas. Dkt. #7-1, pp. 11-12. This argument is belied by the record.

"At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is 'severe' within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities." *Tammy C.-J. v. Comm'r of Soc. Sec.*, 523 F. Supp.3d 368, 373-74 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920(c)).

The plaintiff has the burden to present evidence showing severity. *Id.* at 374. The step-two severity requirement "is *de minimis* and is meant only to screen out the weakest of claims." *Id.* (citation and internal quotation marks omitted). "However, despite this lenient standard, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself,

sufficient to render a condition severe." *Id.* "Rather, to be considered severe, an impairment or combination of impairments must cause more than minimal limitations in [a claimant's] ability to perform work-related functions." *Id.*

Here, the ALJ discussed plaintiff's depression at step two of the sequential analysis, assessing her limitations in the four functional areas set forth in 20 C.F.R. § 4404.1520a(c)(3). Dkt. #6, p. 22. In assessing the areas of "understanding, remembering or applying information" and "concentrating, persisting or maintaining pace," the ALJ specifically cited to Dr. Douglas's treatment records which diagnosed plaintiff with depression but stated generally that her thought processes and mood were normal. *Id.*

Plaintiff's assertion that the ALJ "ignored" Dr. Douglas's records is thus incorrect. Plaintiff also picks isolated remarks from these records to argue that plaintiff's depression should have been considered severe, but that ignores Dr. Douglas's overall assessment that plaintiff's thought processes and mood remained normal, even after the alleged onset date.

Furthermore, the ALJ also cited to plaintiff's activities of daily living to assess the impact of her depression on her functioning. For example, the ALJ noted that, in her function report, plaintiff stated that she could follow spoken and written instructions;  she denied having problems paying attention or remembering things; and she stated that she could finish what she started, allowing for her back pain. Dkt. #6, pp. 187-88.

Plaintiff also argues that the ALJ improperly relied on the opinion of Dr. Christine Ransom, who conducted a psychiatric evaluation of plaintiff and opined that plaintiff's depression was a "mild psychiatric condition that will not significantly interfere with [her] ability to function on a daily basis." Dkt. #6, p. 338. Plaintiff argues that this opinion is not persuasive because Dr. Ransom  only examined plaintiff on one occasion. Dkt. #7-1, p. 12.

This argument is not well taken, as another judge of this Court recently explained in a case where plaintiff's mental health was also at issue:

> Plaintiff's argument suggests that it was error for the ALJ to credit the opinion of Dr. Deneen because he examined Plaintiff on only one occasion. However, it is well-settled that "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016). Because Plaintiff has failed to identify any specific error in the ALJ's assessment of Dr. Deneen's opinion, which is supported by other evidence in the record and his own examination of Plaintiff, remand is not required on this basis.

*Barry J. v. Comm'r of Soc. Sec.*, — F. Supp.3d —, 6:23-CV-06037, 2024 WL 1268281, at *7 (W.D.N.Y. Mar. 26, 2024).

So too, here, plaintiff has failed to point to any specific error in Dr. Ransom's evaluation. Dkt. #7-1, p. 12.

Plaintiff also contends that "the ALJ ignored Plaintiff's major depression at subsequent steps." Dkt. #7-1, p. 13. Again, not true.

In formulating plaintiff's RFC, the ALJ specifically discussed Dr. Ransom's opinion as noted above, Dkt. #6, p. 25, and he thus complied with the requirement that the RFC must account for both severe and non-severe impairments. *See* 20 C.F.R. § 404.1945(a)(2).

Finally, contrary to plaintiff's argument that the ALJ erred by not including mental limitations in the RFC, Dkt. #7-1, p. 15, the ability to perform unskilled work, which the ALJ found here, is consistent with mental limitations even greater than the "mild" limitations caused by plaintiff's depression. *See Deshantal W. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-624-DB, 2024 WL 1157048, at *12 (W.D.N.Y. Mar. 18, 2024) (holding unskilled work consistent with "moderate" mental limitations) (collecting cases).

The Court thus concludes that the ALJ's assessment of plaintiff's depression at step two of the sequential analysis was supported by substantial evidence.

### The RFC Determination

Plaintiff next argues that that the ALJ failed to rely on any medical opinion in formulating plaintiff's RFC and improperly based it on his own lay opinion. Dkt. #7-1, pp. 15-20.

First, plaintiff's assertion that the ALJ failed to rely on any medical opinion is incorrect. The ALJ found the opinion of independent consultative examiner Dr. Nikita Dave "somewhat persuasive." Dkt. #6, p. 25. Dr. Dave opined that plaintiff may have "mild limitations for prolonged standing, repetitive bending, lifting, [and carrying of heavy objects." Dkt. #6, p. 296. Those opined limitations are consistent with the ALJ's assessment that plaintiff would not be capable of more than sedentary work, with the additional limitations noted above.

Second, it is well established that "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Barry J.*, 2024 WL 1268281, at *7 (citation and internal quotation marks omitted). *See also id.* ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions.") (citations omitted).

Third, the ALJ did not rely on his own lay opinion in formulating plaintiff's RFC. Instead, he first reviewed plaintiff's activities of daily living in both her function report and as she reported them to Dr. Ransom during the psychiatric evaluation. Dkt. #6, p. 24. He concluded that these activities were not consistent with the degree of limitations that plaintiff claimed. *Id.*

He then reviewed plaintiff's medical history with respect to her back pain and obesity, as well as the medical opinions and prior administrative findings. As noted, he found somewhat persuasive Dr. Dave's opinion that plaintiff may have "mild" limitations related to her back pain. Dkt. #6, p. 25.

However, the ALJ found unpersuasive the opinions of state agency consultants Dr. Gary Ehlert and Dr. J. Lawrence who opined, respectively, that plaintiff's back problems were not a severe impairment or that she was capable of a reduced range of medium work. Dkt. #6, pp. 25-26. The ALJ explained that the medical records "overall support greater limits than opined," and he thus limited plaintiff to sedentary work. *Id.*

"As a general matter, where an ALJ imposes a limitation in [her] RFC that is more restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation." *Stefanie F. v. Comm'r of Soc. Sec.*, Case # 23-CV-00617-FPG, 2024 WL 2017316, at *4 (W.D.N.Y. May 7, 2024) (citation and internal quotation marks omitted).

The ALJ thus did not formulate plaintiff's RFC based on his own lay opinion, but rather he evaluated the record as a whole. While plaintiff disagrees with his conclusions, she has not shown that his findings lack a basis in the evidence such as would warrant remand. *See Timikia T. v. Comm'r of Soc. Sec.*, 23-CV-184S, 2024 WL 2109775, at *1 (W.D.N.Y. May 10, 2024) ("Where evidence is deemed susceptible to more

than one rational interpretation, the Commissioner's conclusion must be upheld.")

(citation omitted)

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt.

#8) is granted.


The Clerk of Court is directed to close this case.


**SO ORDERED.**


DATED:       Buffalo, New York
             May 20, 2024


                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**